This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-39348

**STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH & FAMILIES
DEPARTMENT,**

Petitioner-Appellee,

v.

**AUDRA T.,**

Respondent-Appellant,

and

**WALTER M.,**

Respondent,

**IN THE MATTER OF DANIEL T.,**

Child.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Kathleen A. McGarry, District Judge**

Rebecca J. Liggett, Chief Children's Court Attorney
Santa Fe, NM
Kelly P. O'Neill, Children's Court Attorney
Albuquerque, NM

for Appellee

Susan C. Baker
El Prado, NM

for Appellant

Ernest O. Pacheco

Santa Fe, NM

Guardian Ad Litem

# MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}** Respondent (Mother) appeals the termination of her parental rights to her child (Child). We entered a notice of proposed disposition, proposing to affirm. Mother filed a memorandum in opposition to that notice, which we have duly considered. Unpersuaded, we affirm.

**{2}** On appeal, Mother contends that the Children, Youth, and Families Department (CYFD) did not provide her reasonable efforts in alleviating the causes and conditions that brought Child into custody. [CN 6]. Our notice of proposed disposition proposed to affirm, based on our suggestions that overall, the evidence supported termination of her parental rights, and that CYFD made reasonable efforts in assisting Mother in complying with and working her treatment plan. [CN 7-8] We suggested that Mother's general failure to comply with her plan also supported the district court's conclusion that termination was appropriate. [CN 7-8]

**{3}** In her memorandum in opposition, Mother now solely, and for the first time, expands on her argument that CYFD failed to make reasonable efforts, by contending that her mental health issues were "serious enough to warrant application of the Americans with Disabilities Act [(ADA)]." [MIO 14] *See* 42 U.S.C. § 12132 (2018) ("[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."). Mother argues that "the ADA imposes an affirmative duty on a public entity such as [CYFD] to make reasonable accommodations for qualified individuals with disabilities[,]" and "the district court was required to consider reasonable accommodations in deciding whether Mother's treatment plan was appropriate and whether [CYFD] made reasonable efforts to rehabilitate her." [MIO 14-15] Mother also cites to the federal Rehabilitation Act to make essentially the same argument. [MIO 15] *See* 29 U.S.C. § 794(a) (2018) ("No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving [f]ederal financial assistance[.]").

**{4}** When a parent wishes to allege ADA violations in the context of termination of parental rights proceedings, this Court has stated:

> To preserve issues concerning violations of the ADA, the parent bears the initial burden of asserting that the parent is a qualified individual with a disability under 42 U.S.C. Section 12131(2) [(2018)]. Thereafter, the

parent must create a factual and legal record sufficient to allow meaningful appellate review of the district court decision on the issue. What constitutes a sufficient record is, of course, different for each case. At a minimum, however, *there must be a request for relief citing the ADA backed by facts developed in the record.*

Determining what accommodation may be reasonable once the ADA is found to apply will call for a more collaborative effort between the parents, CYFD, and the district court. But the initial burden to raise and argue the issues—as early in the case as possible—lies with the parents and their counsel.

*State of N.M. ex rel. Children, Youth & Families Dep't v. Johnny S., Sr.*, 2009-NMCA-032, ¶¶ 8-9, 145 N.M. 754, 204 P.3d 769 (emphasis added). This Court specifically "decline[d] to place on district judges the obligation to initiate inquiry into the applicability of the ADA in particular cases." *Id.* ¶ 7. Instead, "[c]ounsel, who should be most aware of their clients' situation, are best equipped to determine whether the ADA might apply and whether it would be of value to pursue it." *Id.*

**{5}**     Mother does not identify any portion of the record below in which she requested relief citing the ADA and supporting the request with facts in the record, or raising the issue under the Rehabilitation Act, and we are aware of none. *See Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104 ("We will not search the record for facts, arguments, and rulings in order to support generalized arguments."). To the extent Mother points to her guardian ad litem's report to the district court describing Mother's incapacity and mental difficulties, we note that the report makes no ADA argument as required for preservation. [MIO 15-16; 1 RP 85-86] Mother acknowledges "there is little to no evidence in the [r]ecord [p]roper to establish that [CYFD] and/or [the] district court applied the ADA or Rehabilitation Act to Mother's treatment plan. . . . The [r]ecord [p]roper is incomplete in assuring that the ADA and Rehabilitation Act were applied to Mother's case." [MIO 16] Contrary to Mother's assertion that this lack of development in the record below entitles her to "work a new treatment plan which addresses reasonable accommodations for her disabilities[,]" this failure to preserve the issue prevents us from reviewing it on appeal. [MIO 16] *See Johnny S., Sr.*, 2009-NMCA-032, ¶¶ 2-4 (affirming termination of parental rights based on a lack of preservation of a parent's ADA argument, and discussing how two psychological evaluations in the record were insufficient to raise and preserve the argument).

**{6}**     As Mother has not properly preserved her issue, we cannot consider it on appeal, and remain unpersuaded that the district court erred in terminating her parental rights. *See Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 24, 314 P.3d 688 ("To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." (internal quotation marks and citation omitted)).We note that to the extent Mother does not continue to argue her previous issues, we deem those issues abandoned. *State v. Johnson*, 1988-NMCA-029, ¶ 8, 107 N.M. 356, 758 P.2d 306 (stating that when a case is decided on the summary

calendar, an issue is deemed abandoned when a party fails to respond to the proposed disposition of that issue).

**{7}**     Accordingly, and for the reasons stated in our notice of proposed disposition, we affirm.

**{8}     IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**MEGAN P. DUFFY, Judge**